UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

ANGE BOUDLE,

                                        07-CV-2820(CPS)(SMG)

                        Plaintiff,


        - against -
                                        MEMORANDUM OPINION
THE CMI NETWORK, INC., CLEARSKY MARKETING,   AND ORDER
INC., CMI FINANCIAL NETWORK, LLC,
CHERNETT WASSERMAN YARGER & PASTERNAK,
LLC, STEVEN L. WASSERMAN, JOEL PENTZ,
HUGH T. GRINNON, FRANCIS X. MURPHY,
FRANCIS X. MURPHY, III, PETER WRIGHT,
NICHOLAS F. RUSSO, JAMES P. LAKE,
WILLIAM WOLFE and JONATHON GRINNON,

                        Defendants.

----------------------------------------X

SIFTON, Senior Judge.


        On August 2, 2006, plaintiff Ange Boudle filed a complaint

("Complaint") in the Circuit Court for Pinellas County, Florida,

against three groups of defendants:

        1.  The CMI Network, Inc. ("CMI"), Clearsky Marketing,

        Inc. ("Clearsky"), and CMI Financial Network, LLC

        ("Financial") (collectively the "CMI-related business

        entities");

        2.  Individuals believed to be officers and/or

        directors of the CMI-related business entities: Hugh T.

        Grinnon ("HT Grinnon"); Jonathon Grinnon; Francis X.

        Murphy, Jr. ("Murphy, Jr."); Francis X. Murphy, III

        ("Murphy, III"); Peter Wright ("Wright"); Nicholas F.

Russo ("Russo"); James P. Lake ("Lake"); and William
Wolfe ("Wolfe").

3. The law firm and the two individual attorneys who
represented the CMI-related business entities in the
transactions with Boudle: Chernett Wasserman Yarger &
Pasternak, LLC ("CWYP"); Steven L. Wasserman, Esq.,
("Wasserman"); and Joel Pentz, Esq. ("Pentz"),
(collectively, "Chernett Wasserman Defendants").

Plaintiff sought damages for claims of breach of contract,
fraudulent misrepresentation, negligent misrepresentation, breach
of fiduciary duty, aiding and abetting fraud, and unjust
enrichment. Plaintiff also sought an accounting. The Chernett
Wasserman Defendants timely removed this case on May 1, 2007 to
the Federal District Court for the Middle District of Florida.
The Chernett Wasserman Defendants then filed a motion to transfer
the case to the Eastern District of New York, due to the pendency
here of bankruptcy cases filed by defendants HT Grinnon, Jonathan
Grinnon, CMI and Clearsky. On April 11, 2007 and May 11, 2007,
plaintiff and the Chernett Wasserman Defendants, respectively,
commenced adversary proceedings in the bankruptcy court. The
Middle District of Florida District Court granted the transfer
motion on July 3, 2007. Now before this court are plaintiff's
motion to withdraw the references to the bankruptcy court of the
adversary proceedings or, in the alternative, to remand to

Florida state court.  For the reasons set forth below,
plaintiff's motion to withdraw the references is granted for the
limited purpose of determining liability for fraud and damages,
and its motion to remand is denied.

## Background

The following facts are derived from plaintiff's Complaint
and the complaints in the four adversary proceedings.[1]

Plaintiff is a resident of Pasco County, Florida.  CMI and
Clearsky are New York corporations.  Financial is an Ohio for
profit limited liability company.  CWYP, the law firm, is an Ohio
limited liability company, which represented CMI.  Wasserman and
Pentz are residents of Ohio.  HT Grinnon is a resident of New
York and Jonathan Grinnon is a resident of New Jersey.  Murphy,
Jr. and Murphy III are residents of Pennsylvania.  Wright, Russo,
Lake and Wolfe are residents of Florida.

### CMI Transaction

On October 7, 2005, plaintiff loaned CMI $530,000.  The loan
was evidenced by a promissory note ("CMI Note").  As part of the
loan transaction, CMI and plaintiff entered into an Assignment &
Security Agreement ("Security Agreement").  Plaintiff and CMI

---

[1] CMI, Clearsky, and the Grinnons have filed answers to the Complaint
herein and to the complaints in the adversary proceedings, denying the
allegations of fraud.  Nevertheless, I include the allegations, with the
understanding that they are disputed, as they are relevant to the
determination of whether withdrawal of the references would promote judicial
efficiency.  These allegations against CMI, Clearsky, and the Grinnons, which
span this case and the four adversary proceedings, will have to be proved by
plaintiff and the Chernett Wasserman Defendants.

also executed a Loan Agreement ("CMI Loan Agreement").

Pursuant to the CMI Security Agreement and the CMI Loan Agreement, the CMI Note was to be secured by the accounts receivable from two agreements between CMI and Honeywell Security and Custom Electronics and Honeywell ACCESS Systems (collectively, "Honeywell") as "Applicable Accounts Receivable," as well as by general accounts receivable, and all money due from Honeywell to CMI Network under any other agreement (collectively, the "CMI Collateral"). The CMI Security and Loan Agreements are alleged to have represented that none of the CMI Collateral was subject to any lien or encumbrance as of the date of the CMI Note. The CMI Security Agreement also established an escrow account with Defendant Financial as the escrow agent. Repayment of the CMI Note was fully and unconditionally guaranteed ("CMI Guaranty") by HT Grinnon and Jonathan Grinnon (collectively, "Grinnons").

It is alleged that at the time of the execution of the CMI Note and Security Agreement, the CMI Collateral had been pledged to secure other indebtedness ("CMI Prior Pledges"). Documents for at least one of the CMI Prior Pledges were prepared by the Chernett Wasserman Defendants, who also prepared the CMI Note and Security Agreement. None of the defendants informed plaintiff of the CMI Prior Pledges.

Plaintiff alleges that Financial was formed by CWYP on

August 23, 2005, in Ohio, to hold and disburse receivables payments; and that on the same date CMI directed Honeywell to make all payments to Financial to the attention of defendant Wasserman at CWYP.[2]  On October 17, 2005, defendant Wasserman caused a UCC-1 Financing Statement to be filed in New York in favor of plaintiff.  He also caused, on the same date, the filing of an additional UCC-1 Financing Statement in favor of one of the CMI Prior Pledge beneficiaries.  And on January 9, 2006, he filed a third UCC-1 Financing Statement in New York State for the benefit of another entity, pledging the same CMI Collateral as was pledged to plaintiff.  A fourth UCC-1 Financing Statement was filed in New York pledging the same CMI Collateral for the benefit on yet another entity on February 1, 2006.  This filing also named Financial as the debtor, and gave the address of defendants CWYP and Wasserman as the address for Financial.

In the period from December 15, 2005 through January 6, 2006, CMI repaid $225,000 of plaintiff's initial $530,000 loan. It also continued to pay interest until April 1, 2006.  Since that date, plaintiff has received no further payments.

**The Clearsky Transaction**

On November 11, 2005, plaintiff loaned defendant Clearsky $200,000.  This loan was documented by a promissory note

---

[2]  The Chernett Wasserman Defendants contend that they, too, were taken in by the fraud, and were not participants.

("Clearsky Note") and a Loan Agreement ("Clearsky Loan Agreement"). Payments were due on the last day of January through March 2006, with a final maturity payment due on April 30, 2006. Pursuant to the Clearsky Loan Agreement, the Clearsky Note was to be secured by the accounts receivable from Hearts on Fire, Horner Xpress, Intertape Polymer Group, as well as general accounts receivable (collectively, "Clearsky Collateral"). As with the CMI Transaction, the Clearsky Loan Agreement provided that none of the Clearsky Collateral was subject to any lien or encumbrance as of the date of the Clearsky Note and that Clearsky would keep the Clearsky Collateral clear of any lien or encumbrance for the term of the loan. The Clearsky Loan Agreement established an escrow account with defendant Financial as the escrow agent to assure repayment of the Clearsky Note to plaintiff. Again, the Grinnons allegedly guaranteed the Clearsky Note ("Clearsky Guaranty").

However, plaintiff alleges that at the time of the execution of the Clearsky Note and Loan Agreement, the Clearsky Collateral had already been pledged. Defendants did not inform plaintiff of this prior lien. Clearsky allegedly made no payments on the Note of either principal or interest.

On January 31, 2007, Hugh Grinnon, and on February 1, 2007, Jonathan Grinnon filed Chapter 7 petitions for bankruptcy in the United States Bankruptcy Court for this district. CMI and

Clearsky subsequently filed for bankruptcy in this district on April 5, 2007, as did Murphy, Jr., in Pennsylvania, on April 7, 2007. The Bankruptcy Court filings automatically stayed all proceedings as to these defendants. On April 11, 2007, plaintiff filed adversary proceedings in the bankruptcy court for this district seeking judgment denying the Grinnons discharge of their guarantees of the CMI and Clearsky Notes, pursuant to 11 U.S.C. § 523(a)(2)(A) and (B). On May 11, the Chernett Wasserman Defendants filed adversary proceedings in the Eastern District Bankruptcy Court against the Grinnons, also requesting that any debt owed to them by the Grinnons not be discharged.[3] Based on the stays, I issued an Order on July 18, 2007, administratively closing the case transferred to this Court from Florida against the Grinnons, Murphy, Jr., CMI and Clearsky subject to reopening if plaintiff's claims are not disposed of in the bankruptcy proceedings.[4]

---

[3] No adversary proceedings were filed by plaintiff or the Chernett Wasserman Defendants in the CMI or Clearsky bankruptcy cases. Should any adversary proceedings be filed against these entities that require a determination of liability for fraud and damages, I will withdraw the reference for those proceedings as well for that limited purpose, for the reasons discussed below.

[4] Murphy, Jr. filed for Chapter 7 in the United States Bankruptcy Court for the Eastern District of Pennsylvania. Boudle has not served Wolfe or Lake.

**Discussion**

Plaintiff moves to withdraw the references[5] of the adversary proceedings.  Under 28 U.S.C. § 157(d), a "district court may withdraw, in whole or in part, any case or proceeding referred [to bankruptcy court] under this section, on its own motion or on timely motion of any party, for cause shown."  Section 157(d) does not define cause, but the Second Circuit has held that a:

> district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn . . . [O]nce a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors.

*In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993), *cert. dismissed*, 511 U.S. 1026 (1994).

The Grinnons contend that the motion should be denied because determination of dischargeability is a core proceeding. "Core proceedings include, but are not limited to– . . . (I) determinations as to the dischargeability of particular debts;(J) objections to discharges; . . ."  28 U.S.C. § 157(b)(2). Further, "Courts have defined core proceedings as those that are unique to or uniquely affected by the bankruptcy proceedings, or

---

[5] The Chernett Wasserman Defendants do not oppose plaintiff's motion to withdraw the references of the adversary proceedings and, indeed, at oral argument before me on November 1, 2007, stated they joined in the motion.  The Grinnons, however, have submitted opposition, discussed below.

directly affect a core bankruptcy function." *McCord v. Papantoniou*, 316 B.R. 113, 119 (E.D.N.Y. 2003) (internal quotation marks and citations omitted); *see also In re Burger Boys, Inc.*, 183 B.R. 682, 685 (S.D.N.Y. 1994) ("A core proceeding is generally defined as a matter which would have no existence outside of the bankruptcy case") (internal quotations omitted). "A matter is a core proceeding if it invokes a substantive right provided by the Bankruptcy Code or if it could only arise in the context of a bankruptcy case." *In re Kentile Floors, Inc.*, 1995 WL 479512, at *2 (S.D.N.Y. Aug. 10, 1995). The fact alone that matters of state law are part of a proceeding does not render that proceeding non-core. *See* 11 U.S.C. § 157(b)(3) ("A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law").

The Boudle adversary proceedings seek to establish the non-dischargeability of the Grinnons' guarantees of the CMI and Clearsky Notes, as a result of the Grinnons' alleged fraud, pursuant to 11 U.S.C. § 523(a)(2)(A) and (B).[6]  Boudle has made

---

[6]  11 U.S.C. § 523(a)(2)(A) and (B) provide:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

jury demands in both its adversary cases.[7]  The CWYP proceedings

similarly allege fraud, in addition to other claims for relief,

seeking denial, pursuant to §§ 523(a)(2) and (4)[8] and 727(a)(2),

(3), (4), and (5)[9] of the Bankruptcy Code, of any discharge of

_____

(B) use of a statement in writing--

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

[7]  The Chernett Wasserman Defendants did not make jury demands in their adversary proceedings against the Grinnons.

[8]  11 U.S.C. § 523(a)(4) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

[9]  11 U.S.C. §§ 727(a)(2), (3), (4), and (5) provide:

(a) The court shall grant the debtor a discharge, unless . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--

    (A) property of the debtor, within one year before the date of the filing of the petition; or

    (B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the

any indebtedness to CWYP, Wasserman, and Pentz that arises out of
their claims for contribution and indemnification.  The
proceedings are accordingly core proceedings within the meaning
of 11 U.S.C. § 157(b)(2) and the parties admit as much in their
complaints in the adversary proceedings.  Thus, this factor,
which courts deem the most important, *see*, *e.g.*, *Burger Boys*, 94
F.3d at 762, counsels against withdrawing the references.  Other
factors, however, weigh in favor of withdrawal.

     The first factor weighing in favor of withdrawal is that
plaintiff has requested in its adversary proceedings a jury
trial.[10]  Under *Granfinanciera, S.A. v. Nordberg* 492 U.S. 33, 42
(1989), to determine whether a party in an adversary proceeding
has a right to a jury trial, the district court must conduct a

---

case--

    (A) made a false oath or account;

    (B) presented or used a false claim;

    (C) gave, offered, received, or attempted to obtain money,
property, or advantage, or a promise of money, property, or
advantage, for acting or forbearing to act; or

    (D) withheld from an officer of the estate entitled to possession
under this title, any recorded information, including books,
documents, records, and papers, relating to the debtor's property
or financial affairs;

(5) the debtor has failed to explain satisfactorily, before
determination of denial of discharge under this paragraph, any loss of
assets or deficiency of assets to meet the debtor's liabilities.

[10]  Though not listed in *Orion*, several courts have noted the presence
of a jury demand is a factor to be considered with respect to withdrawal.
*See*, *e.g.*, *Oneida, Ltd. v. Pension Benefit Guaranty Corp.*, 372 B.R. 107, 111
(S.D.N.Y. 2007); *Kenai Corp. v. Nat'l Union Fire Ins. Co.*, 136 B.R. 59, 61
(S.D.N.Y. 1992).

two part test.  First, the trial court must determine whether the claim asserted would have been considered an action at law or an action at equity in eighteenth century England.  Second, the trial court must determine whether the remedy sought is equitable or legal.  The second consideration has more import than the first.  *Id.*

The claims in the adversary complaints under §§ 523(a)(2)(A) and (B), and (4), are predicated upon a state law cause of action for fraud.  Fraud was an action at common law.  The remedy sought, however, non-dischargeability, is equitable in nature. *In re Weinstein*, 237 B.R. 567 (Bankr. E.D.N.Y. 1999).  The *Weinstein* court, when faced with this conflict between the two parts of the *Granfinaciera* test, determined that plaintiff was entitled to a jury trial on the issue of liability and damages. The *Weinstein* court accordingly bifurcated the proceedings and transferred the adversary proceeding to the district court for a determination of liability and the amount of the fraud damages. *Id.* at 574.

Plaintiff is entitled to a jury trial in the adversary proceedings it brought on the issues of liability and damages. Further, because the parties have not requested and the district court has not given consent for the bankruptcy court to conduct a jury trial in the bankruptcy court, as required by 11 U.S.C. § 157(e), the district court is presumably the best equipped to

provide plaintiff with the jury trial to which he is entitled. In the circumstances, this factor counsels in favor of withdrawing the reference.[11]

Moreover, judicial economy counsels in favor of withdrawing the reference, though the Grinnons contend otherwise. The action pending in this court between plaintiff and the Chernett Wasserman Defendants arises out of the same operative facts as those underlying the adversary proceedings.[12] Not withdrawing the reference would require plaintiff to prove the same fraud allegations in two different courts. Moreover, the Chernett Wasserman Defendants' defense in this action - that they too were defrauded by the Grinnons - is identical to their claims in their adversary proceedings. Withdrawal of the reference will also streamline discovery. The limited scope of the withdrawal addresses the Grinnons' concerns about the economical use of their resources.

Nor is forum shopping at issue. Plaintiff filed his case in

---

[11] The Grinnons cite to a Western District of North Carolina case, *In re Fink*, 294 B.R. 657 (W.D.N.C. 2003), in support of their argument that plaintiff does not have a right to a jury trial, and accordingly that this factor also does not support the motion for withdrawal. The case, though analogous to this matter and *Weinstein*, determined, after applying the *Gianfinanciera* test, that there was no right to a jury trial in a dischargeability proceeding based on fraud. I, however, find the *Weinstein* court's reasoning and result more persuasive.

[12] I note that the Chernett Wasserman Defendants have included additional claims of non-dischargeability that are unrelated to the fraud that is alleged to have occurred in the CMI and Clearsky Loan Transactions. However, as the withdrawal is limited to the determination of liability for fraud and damages, these additional allegations do not bear on this decision.

Florida state court, and it was removed on motion by the Chernett
Wasserman Defendants to the Middle District of Florida.  The
Grinnons chose to bring their bankruptcy actions in the Eastern
District.  It was once these actions were pending in this
district that the Chernett Wasserman Defendants moved to transfer
the case to this district.

Additionally, determining the liability and damages in this
court will promote the uniformity of the Grinnons's bankruptcy
administration, as one determination on the issue will ensure
consistent results among the proceedings.

Accordingly, though the dischargeability of debts is a core
bankruptcy matter, because plaintiff has demanded and is entitled
to a jury trial, the operative facts of the fraud claims in the
adversary proceedings are identical to those in this action, and
judicial economy is enhanced, the reference for the four
adversary proceedings is withdrawn for the limited purpose of
determining liability for fraud and damages.[13]  *See In re Burger
Boys*, *Inc.*, 94 F.3d 755, 762 (2d Cir. 1996) (finding no error in
district court's withdrawal of the reference even though the
issue was "plainly a core bankruptcy matter" where such

---

[13]  As the Chernett Wasserman Defendants join in the plaintiff's motion
to withdraw the references, *see* footnote 5, *supra*, I need not be concerned
with the Grinnons' argument that plaintiff does not have standing to seek
withdrawal of the Chernett Wasserman Defendants' adversary proceedings.
Moreover, even if the issue remained, I would withdraw the references of the
Chernett Wasserman Defendants' adversary proceedings, *sua sponte*, pursuant to
11 U.S.C. § 157(d), as all the same factors, save the jury demand, counsel in
favor of such a determination.

withdrawal enhanced judicial economy, did not delay the parties, and did not present concerns of forum shopping).[14]

## Conclusion

For the reasons set forth above, plaintiff's motion to withdraw the references, for the limited purpose of determining liability for fraud and damages, in the adversary proceedings commenced against the Grinnons by plaintiff and the Chernett Wasserman defendants is granted, and its motion to remand is

---

[14] Plaintiff has styled its motion to remand the case to the Circuit Court for Pinellas County, Florida, as one in the alternative if I decline to withdraw the references. Since I do withdraw the references, I need not consider this portion of plaintiff's motion, and do not consider its arguments regarding abstention. In any event, I note that plaintiff never sought remand of this action while it was pending in the Middle District of Florida or filed a motion to reconsider, or made any other attempt to seek review of the Florida District Court's venue transfer order. *See, e.g.,* *In re AP Industries*, 117 B.R. 789, 797 (Bankr. S.D.N.Y. 1990) (declining to hear motion to transfer venue back to transferor court where party did not appeal transfer order, noting motion was an "improper collateral attack").

As the issue of this court's jurisdiction was raised in plaintiff's motion to remand, however, I address the issue here briefly, because subject matter jurisdiction of a federal court can be challenged at any stage of the litigation (including for the first time on appeal), *see American Fire & Cas. Co. v. Finn*, 341 U.S. 6 (1951), and parties cannot confer subject matter jurisdiction on federal courts. *See Sosna v. Iowa*, 419 U.S. 393 (1975).

Under 28 U.S.C. § 1334(b), this court has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor v. Higgins*, 743 F.2d 985, 994 (3d Cir. 1984), *overruled on other grounds by, Things Remembered, Inc. v. Petrarca,* 516 U.S. 124 (1995). This action is related to the bankruptcy proceedings as plaintiff is listed as a creditor in each of the bankruptcy cases and has objected to the dischargeability of his debt in the bankruptcy cases filed by the Grinnons. If plaintiff recovers in this action, it could have an impact on the bankruptcy cases and their respective estates. *See In re Canion*, 196 F.3d 579, 586-587 (5th Cir. 1999) (affirming referral to bankruptcy court of civil action in which judgment creditor of a Chapter 7 bankrupt debtor sued the debtor's friends and relatives in federal district court alleging they had conspired to interfere with creditor's efforts to collect on its judgment, as showing that successful action would reduce claims against bankrupt estate was sufficient to establish "related to" jurisdiction under § 1334(b)).

denied. The Clerk is directed to withdraw, from the bankruptcy court, the references to adversary proceedings numbers 07-8122, 07-8123, 07-8167, and 07-8168, and transmit a copy of the within to all parties and the assigned Bankruptcy and Magistrate Judges.

SO ORDERED.

Dated :   Brooklyn, New York
          November 6, 2007

                        By: /s/ Charles P. Sifton (electronically signed)
                            United States District Judge