```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
```

Ange Boudle,

                Plaintiff,

  -against-                                  07-CV-2820

CMI Network, Inc., Clearsky Marketing,    MEMORANDUM
Inc., CMI Financial Network, LLC,          AND ORDER
Chernett Wasserman Yarger & Pasternak,
LLC, Steven Wasserman, Esq., Joel Pentz,
Esq., Francis Murphy, Peter Wright,
Nicolas Russo, James Lake, William Wolfe
Eric Assouline, Esq., Jonathan Grinnon,
Hugh Grinnon,

                Defendants.

```
---------------------------------------X
```

      Plaintiff Ange Boudle commenced this action against defendants CMI Network, Inc., Clearsky Marketing, Inc., CMI Financial Network, LLC, Chernett Wasserman Yarger & Pasternak, LLC, Steven Wasserman, Esq., Joel Pentz, Esc., Francis Murphy, Francis Murphy III, Peter Wright, Nicholas Russo, James Lake, William Wolfe, Eric Assouline, Esq., Jonathan Grinnon, and Hugh Grinnon on May 1, 2007. Plaintiff alleged breach of contract, fraudulent misrepresentation, negligent misrepresentation, breach of fiduciary duty, aiding and abetting fraud, and unjust enrichment against some or all of the defendants. Plaintiff sought compensatory and punitive damages, interest, costs, attorneys fees, and an accounting of the funds. On February 7, 2008, the parties settled the case. Now before the Court is the

motion of defendants Jonathan Grinnon and Hugh Grinnon (the "Grinnons") in opposition to the Final Judgment on Consent in favor of plaintiff with regard to a term of the settlement agreement. For the reasons set forth below, the Final Judgment on Consent is vacated.

## BACKGROUND

The following facts are taken from the parties' submissions in connection with this motion. Disputes are noted.

The parties to this action appeared before Magistrate Judge Steven Gold for mediation on February 7, 2008. The mediation was successful and the settlement agreement between the parties was placed on the record before Magistrate Gold and memorialized in a written settlement (the "Settlement Agreement").

Paragraph four of the Settlement Agreement sets forth the obligations of defendant Grinnons to plaintiff, and sets forth plaintiff's remedies if the Grinnons fail to meet those obligations. The Settlement Agreement provides that the Grinnons shall pay plaintiff "the following sum," defined as the "Grinnon Settlement Amount." Following these lines are five indented sub-paragraphs, entitled A-F, which state that defendant Grinnons must pay a settlement amount whose value is determined by the amount of time elapsed since the forming of the agreement. $100,000 is due if paid within one year of the effective date, $150,000 is due if paid within a year and a half of the effective

date, and so on.[1] After three years, $600,000 is due, which is the highest amount stated. Following this payment schedule, paragraph four then proceeds in ordinary block text, and states that the Grinnons "shall make monthly payments" of $2,500 per month towards the payment of the Grinnon Settlement Amount, commencing on May 1, 2008 and continuing for a maximum of 36 payments. These payments are called the "Grinnon Installment Payments." In the event that the Grinnons make all 36 monthly payments, the maximum Settlement Amount is reduced from $600,000 to $500,000. Paragraph four further provides that if the Grinnons fail to pay the Grinnon Settlement Amount, plaintiff is entitled to reopen the action and enter judgment against the Grinnons for the maximum amount of $600,000, less any installment payments made, together with attorneys' fees equal to fifteen percent of the unpaid principal sum. The agreement was secured by a deed of trust pertaining to certain real property.

The Settlement Agreement includes provisions stating that the agreement as written constitutes the entire agreement between the parties, that there are no other agreements, understandings, or representations beyond the written agreement, and that no part of the agreement may be waived or modified except by a writing

---

[1] The full payment schedule is as follows: (a) $100,000 if paid within one year; (b) $150,000 if paid within a year and a half; (c) $200,000 if paid within two years; (d) $250,000 if paid within two and a half years; (e) $300,000 if paid within three years; and (f) $600,000 if paid after three years.

signed by both parties. The Settlement Agreement states that it will be governed by the laws of New York State.

The Grinnons have made no monthly installment payments.

On November 19, 2008, plaintiff made a motion for approval of what she termed a "consent judgment," requesting that this Court enter judgment against the Grinnons in the amount of $600,000, together with attorneys' fees in the amount of $90,000. On November 20, 2008, defendant Grinnons submitted an affidavit opposing the entry of judgment against them. On November 24, 2008, I approved the consent judgment. On December 10, 2008, I directed the parties to show cause why the entry of judgment should not be vacated.

## DISCUSSION

Plaintiff alleges that the Settlement Agreement is unambiguous, fully integrated, and provides for entry of default in the full amount of $600,000 if defendant Grinnons fail to make the $2,500 monthly payments. Defendant Grinnons maintain that the Settlement Agreement clearly states that the only remedy for failing to make the $2,500 monthly payments is the increase in total amount due from $500,000 to $600,000, and that default may not be entered until the end of the three-year period as stated in the payment schedule. Defendant Grinnons further maintain that to the extent that the Settlement Agreement appears to conflict with this interpretation, the transcript of the settlement

conference and emails exchanged between the parties indicate that this is the correct interpretation.

"A settlement agreement is a contract that is interpreted according to general principles of contract law. Once entered into, the contract is binding and conclusive." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007). When determining the meaning of a contract, a court "ordinarily looks only at the words used by the drafters, who presumably understood what they intended." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 426 (2d Cir. 1992). A contract that contains a provision stating that the contract represents the entire understanding between the parties "bar[s] the introduction of extrinsic evidence to vary or contradict the terms of the writing." *Primex Int'l Corp. v. Wal-Mart Stores, Inc.*, 89 N.Y.2d 594, 627; 679 N.E.2d 624; 657 N.Y.S.2d 385 (1997). If the language employed in a contract "unambiguously conveys the parties' intent, extrinsic evidence may not properly be received..." *Id*. at 428. The "parole evidence rule bars proof of prior oral statements offered to refute the unambiguous terms of a written, integrated contract." *O'Hearn v. Bodyonics, Ltd.*, 22 F.Supp.2d 7, 13 (E.D.N.Y. 1998).

If the terms of a contract are ambiguous, however, extrinsic evidence may be admitted in order to determine its meaning. Ambiguous language is that which is "capable of more than one meaning when viewed objectively by a reasonably intelligent

person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Seiden Assoc.*, 959 F.2d at 428 (quotations omitted). The determination of whether a contract is ambiguous is a question of law for the court, and contracting parties "may not create ambiguity merely by urging conflicting interpretations of their agreement." *Sayers v. The Rochester Telephone Corp.*, 7 F.3d 1091, 1094-95 (2d Cir. 1993).

*The 'Plain Language' of the Settlement Agreement*

The Settlement Agreement provides that defendant Grinnons "shall" make monthly payments. This clause occurs in the body of the text, separate from the indented text that is termed the "Grinnon Settlement Amount." The agreement states that in the event the Grinnons make all installment payments, the Grinnon Settlement Amount shall be reduced to $500,000. The following sentence provides that "if the Grinnons fail to pay the Grinnon Settlement Amount," then plaintiff is entitled to seek judgment in the maximum amount of $600,000. These two sentences are not connected. The first refers to the Grinnon Installment Payments, whereas the second refers to the Grinnon Settlement Amount, which describes a pay schedule over a three-year period in indented paragraphs. There is no indication that the conditions attached

to the Grinnon Settlement Amount also apply to the installment payments. Thus, the remedy for failure to pay the Grinnon Settlement Amount - the entry of judgment against the Grinnons - does not apply to failure to pay the installments.

Plaintiff states that the installment payments are required, as shown by the word "shall" when describing the payments, which implies a "mandatory course of action." *Seabury Constr. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 68 (2d Cir. 2002). From this, plaintiff reaches the conclusion that failure to make the installment payments incurs the same penalty as failure to pay the Grinnon Settlement Amount. However, the fact that installment payments are required does not imply that the appropriate remedy for failure to make the installment payments is a judgment for the full $600,000. Instead, the most straightforward reading of the text indicates that the penalty for failure to pay the required installments is an increase in the maximum settlement amount from $500,000 to $600,000.

Common sense bolsters this interpretation. It would be a strange result if the failure to make one $2,500 payment carried the same penalty as failing to pay the settlement amount at the end of a three year period.

*Extrinsic Evidence of the Settlement Agreement*

Even if the Settlement Agreement were ambiguous, which it is

not, the transcript of the settlement conference before Magistrate Judge Gold makes clear that the consequence of failure to pay the installments is simply an increase in the total potential settlement amount from $500,000 to $600,000, which is still contingent on the failure to pay the settlement within three years. During the settlement conference, attorney for plaintiff explained the installment payment system: "If there is any default on the $2,500 a month monthly payments, <u>and</u> the full settlement amount... is not paid before the end of 36 months, the amount of the confessed judgment will be $600,000." Transcript of Settlement Conference at 5:9-13 (emphasis added). The triggering condition for payment of the judgment is the failure to pay before the end of 36 months. Failure to pay the installments alone does not entitle plaintiff to seek entry of judgment.

**CONCLUSION**

For the reasons stated above, the Final Judgment on Consent is vacated. The Clerk is directed to transmit a copy of the within to all parties and the assigned Magistrate Judge.

SO ORDERED.

Dated:   Brooklyn, New York
         January 27, 2009

                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge